[Cite as *In re K.S.W.*, 2023-Ohio-3763.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

IN THE MATTER OF:

K.S.W. AND T.I.M.,
DEPENDENT CHILDREN

CASE NOS. 2023-P-0046
2023-P-0047

Civil Appeals from the
Court of Common Pleas,
Juvenile Division

Trial Court Nos. 2021 JCC 00266
2021 JCC 00267

## O P I N I O N

Decided: October 16, 2023
Judgment: Affirmed

*Victor V. Vigluicci*, Portage County Prosecutor, and *Theresa M. Scahill*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Appellee, Portage County Department of Job and Family Services).

*Barbara Martincic*, Martincic Law, LLC, P.O. Box 11, Mentor, OH 44061 (For Appellant, Melanie A. Wade).

*Rebecca R. Grabski*, Bret Jordan Co., LPA, 206 South Meridian Street, Suite A, Ravenna, OH 44266 (Guardian ad litem).

MARY JANE TRAPP, J.

{¶1} Appellant, Melanie Wade ("Ms. Wade"), appeals from the judgment of the Portage County Court of Common Pleas, Juvenile Division, which terminated her parental rights and granted permanent custody of her two minor children to appellee, Portage County Department of Job and Family Services ("PCJFS").

{¶2} Ms. Wade raises one assignment of error, contending the trial court abused its discretion and violated her rights to due process by denying her request for a continuance on the day of trial.

{¶3} After a careful review of the record and pertinent law, we find Ms. Wade's assignment of error is without merit. Since the inception of the underlying matter, Ms. Wade has been uncooperative and uncommunicative with PCJFS and the court, and she failed to comply with her case plan. She attended only three hearings, one via telephone. Ms. Wade contends she was unable to attend the hearing because she was physically assaulted several days prior to the hearing. While we recognize the trauma associated with assault, the court gave Ms. Wade two different ways to participate in the hearing. In addition, she fails to argue on appeal how the outcome would have been different had she been present. Under the unique facts and circumstances of this case, we cannot find the trial court abused its discretion in denying Ms. Wade's motion for a continuance.

{¶4} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

**Substantive and Procedural History**

{¶5} The history of this case, as relevant to whether the trial court abused its discretion in denying Ms. Wade's motion to continue the permanent custody hearing, is as follows:

{¶6} On May 19, 2021, PCJFS filed a complaint for temporary custody against Ms. Wade and the father of two of her minor children, Terrence Miller ("Mr. Miller"), alleging the children, K.S.W. (D.O.B. 1/4/2014) and T.I.M. (D.O.B. 1/30/2016), were

2

neglected, abused, and dependent.[1] The complaint further alleged that the Portage County Sheriff ordered the children's removal when Ms. Wade was arrested on a felony warrant. The officers arresting her noted the home had an odor of marijuana. Ms. Wade was uncooperative with law enforcement, she refused to identify herself, and she refused to speak to a PCJFS social worker. Mr. Miller was incarcerated at the time.

{¶7} On May 19, 2021, the trial court held a shelter care hearing. Ms. Wade was absent for the hearing because she was in jail.

{¶8} Approximately one month later, in June 2021, an adjudicatory hearing was held. Ms. Wade had been released from jail the day before the hearing. She was absent from the hearing but was represented by her court-appointed counsel.

{¶9} In July 2021, a disposition hearing was held. Ms. Wade was absent from the hearing but was represented by her court-appointed counsel.

{¶10} On August 3, 2021, Ms. Wade's counsel filed a motion to withdraw. Her counsel stated he received a phone call from her that morning requesting he file certain "things" that "made no sense," including amendments to the children's nationality, to revoke their citizenship, and to have them identified as sovereign indigenous Americans. When he attempted to inquire into the veracity of Ms. Wade's requests, she verbally threatened him. Counsel further stated the August phone call was the first time she was in contact since the morning of the adjudicatory hearing in June. On that morning, she had requested he file a motion for a continuance because she had "assessments and other obligations" to take care of related to her pending criminal charges. Accordingly, he filed the motion to continue, which the trial court denied.

---

1. The complaint was also brought on behalf of Ms. Wade's third child from a different father, whose case was subsequently bifurcated from the instant matter.

3

Case Nos. 2023-P-0046, 2023-P-0047

{¶11} Two days later, Ms. Wade filed an "affidavit of truth," declaring she and her children were sovereign individuals, and they were not subject to state and federal law. She also filed a "revocation of power of attorney." Several days later, Ms. Wade filed a handwritten "notice" that she was proceeding pro se.

{¶12} PCJFS subsequently filed a motion to limit Ms. Wade's visitation with the children and to allow them to provide visitation through a video platform such as Zoom or monitored phone calls because Ms. Wade's visitations at the visitation center were hostile and disruptive. Further, she was telling the children false information and visibly upsetting them.

{¶13} The trial court held a hearing, noting Ms. Wade was absent from the hearing but represented by counsel. The court granted Ms. Wade's counsel's motion to withdraw, terminated Ms. Wade's visitation at the visitation center, and allowed Ms. Wade to visit the children via Zoom.

{¶14} On November 4, 2021, Ms. Wade filed a motion to dismiss, contending the court had no subject matter jurisdiction over her and her children, and she had submitted a "Declaration of Nationality." The motion was signed by Ms. Wade as an Ambassador of the Toltec Nation-State.

{¶15} The trial court held a review hearing, during which it also considered Ms. Wade's motion. Ms. Wade was absent from the hearing. The trial court overruled the motion, noting Ms. Wade did not attach an affidavit or exhibits that would lead the court to believe she was a citizen of any sovereign except the United States of America and the state of Ohio.

4

**{¶16}** On May 6, 2022, PCJFS filed a motion to suspend visitation with Ms. Wade, contending she disrupted the children's behavior. When she did visit, she would leave early, and she spent a significant time arguing with PCJFS and caregivers. She also told the children they were kidnapped by PCJFS.

**{¶17}** On May 23, 2022, Ms. Wade filed a "Petition for Modification of Pre-existing Claim for Custody and Visitation," contending in-person visits would be in the best interest of the children.

**{¶18}** On August 15, 2022, the trial court held a review hearing. Ms. Wade was absent from the hearing. The court noted, in relevant part, that "Ms. Wade has not complied with her case plan objectives. She has not submitted to random drug screens. The agency does not know where she is residing. Ms. Wade has not provided an address for safe and stable housing. Ms. Wade continuously fails to appear for Court hearings and does not obey to [sic] the Court's Orders as to visitation."

**{¶19}** On October 25, 2022, following a review hearing, the trial court issued a judgment entry, noting Ms. Wade appeared late, and she was afforded an opportunity to speak.

**{¶20}** On January 17, 2023, Ms. Wade filed a "Motion for Audio Appearance," requesting to appear for the hearing set later that day via audio/telephone due to "unforeseeable events." The trial court granted the motion, and Ms. Wade appeared for the semi-annual review hearing via telephone, pro se.

**{¶21}** On March 21, 2023, PCJFS filed a motion for permanent custody of the two minor children. Several days later, the trial court scheduled the hearing for June 6, 2023. Ms. Wade was appointed counsel per her request.

5

{¶22} On May 5, 2023, Ms. Wade's counsel filed a motion to continue the permanent custody hearing because Ms. Wade was "unavailable" on that date. The trial court denied the motion.

{¶23} On the day before the hearing, Ms. Wade's counsel filed a motion requesting Ms. Wade be permitted to participate in the hearing via Zoom because she was the victim of a criminal assault.

{¶24} The transcript of the hearing reveals the trial court considered her motion prior to the hearing. Her counsel explained he had received a text message from Ms. Wade the day before. She indicated she had been the victim of an assault, and she was receiving medical attention. He later learned she was in a domestic violence shelter. Ms. Wade told him she was unable to attend the hearing due to medical issues and her physical appearance. After receiving notification from the court that Ms. Wade could participate via Zoom, he sent her a text. She had sent him a text that morning with a screenshot of a medical form from the Cleveland Clinic in Akron, Ohio. She informed him that she did not wish or agree to participate via Zoom or have him represent her without her presence. The court also made a telephone number available, but all calls attempting to reach her were directed to her voicemail.

{¶25} The trial court agreed with her counsel that he should continue to represent her to, at the very least, make evidentiary objections and ensure the state was proving its case by clear and convincing evidence. The court noted it made two accommodations for her to attend. Further, she submitted no evidence that she was a victim of assault and that she was incapable of appearing at the hearing, noting that Ms. Wade went to the emergency department "after she completed her work shift at Taco Bell."

6

Case Nos. 2023-P-0046, 2023-P-0047

{¶26} The court found there had been "a lot of delay" in her appearances and "all the different appearances she's had" before the court, and she only attended some hearings. The trial court denied her motion for a continuance.

{¶27} One of the state's witnesses was Detective Kirk Hostetler ("Det. Hostetler") from the Portage County Sheriff's Office, human trafficking division. He testified he met with Ms. Wade on the Wednesday or Thursday before the hearing in the emergency room of Akron General Hospital. He interviewed her following the assault to determine if she was a victim of human trafficking, and he connected her with services that could find her a safe shelter.

{¶28} Ultimately, the trial court granted permanent custody of the two minor children to PCFJS, finding it was in the children's best interest.

{¶29} Ms. Wade filed the instant appeal, and raises one assignment of error for our review:

{¶30} "The trial court abused its discretion in denying Mother's request for continuance in violation of her due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶31} In Ms. Wade's assignment of error, she contends the trial court abused its discretion and violated her due process rights by denying her motion for a continuance of the permanent custody hearing.

**Termination of Parental Rights**

{¶32} It is well established that a parent's right to raise a child is an essential and basic civil right. *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997). The permanent termination of parental rights has been described as "'the family law equivalent

7

of the death penalty in a criminal case.'" *Id.*, quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). Based upon these principles, the Supreme Court of Ohio has determined that a parent must be afforded every procedural and substantive protection the law allows. *Id.* Thus, "great care must be taken to ensure that due process is used in parental-termination proceedings." *In re Q.G.*, 170 Ohio App.3d 609, 2007-Ohio-1312, 868 N.E.2d 713, ¶ 12 (8th Dist.).

{¶33} While the rights of a parent to his or her child are fundamental, they are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). Although the termination of the rights of a natural parent should occur as a last resort, termination is expressly authorized when necessary for the welfare of the child. *In re A.M.*, 11th Dist. Ashtabula Nos. 2022-A-0090 and 2022-A-0091, 2023-Ohio-671, ¶ 36.

{¶34} With these principles in mind, we turn to whether the trial court abused its discretion in denying Ms. Wade's motion for a continuance.

## Motion to Continue

{¶35} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge." *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981); *see State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 45 N.E.2d 763 (1942), paragraph one of the syllabus. "[A]n appellate court will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." *Buck* at 538. In many situations, a court will have acted within its discretion whether it granted or denied the continuance. "'When applying the abuse of discretion standard [in these situations], a reviewing court is not free to

8

merely substitute its judgment for that of the trial court.'" *Fontanella v. Ambrosio*, 11th Dist. Trumbull No. 2001-T-0033, 2002-Ohio-3144, ¶ 17, quoting *In re Jane Doe I*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

**{¶36}** An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.Rev.2004).

**{¶37}** "'There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Unger* at 67, quoting *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964).

**{¶38}** The Supreme Court of Ohio has instructed trial courts to consider several factors in evaluating a motion for a continuance, including "[1] the length of the delay requested; [2] whether other continuances have been requested and received; [3] the inconvenience to litigants, witnesses, opposing counsel and the court; [4] whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; [5] whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and [6] other relevant factors, depending on the unique facts of each case." *Unger* at 67-68. In addition, a defendant must show how he or she was prejudiced by the denial of the continuance before there can be a finding of prejudicial error. *State v. Broom*, 40 Ohio St.3d 277, 288, 533 N.E.2d 682 (1988).

**{¶39}** Pursuant to Juv.R. 23, continuances "shall be granted only when imperative to secure fair treatment for the parties." Loc.R. 14.07 of the Portage County Court of

9

Common Pleas, Juvenile Division, further provides, "No case will be continued on the day of the hearing, except for good cause shown, which cause was not known to the attorney or party prior to the day of the hearing, notwithstanding all other counsel and/or parties agreement to same."

**{¶40}** Applying the factors from *Unger* to the present case, we determine the trial court did not abuse its discretion in denying Ms. Wade's motion for a continuance of the permanent custody hearing. As our review of the record indicated, Ms. Wade attended only three hearings during the entirety of the underlying matter. She appeared in person for two of those hearings and participated in the third via telephone. While we recognize the physical and mental trauma that may ensue from an assault, and we recognize that Det. Hostetler saw her after the assault and noted some bruising and swelling to the left side of her face, Ms. Wade was given two different ways to participate in the hearing, yet refused any accommodations and the representation of her counsel. It is critical to note that Ms. Ward's post-assault motion to attend the hearing via Zoom was granted, but she later chose to advise her attorney that she would not participate. An offer was made for her to attend via telephone, but attempts to reach her on the day of the hearing went unanswered.

**{¶41}** In addition, she failed to put forth any offer of proof of the evidence and/or testimony she would have presented had she been at the hearing or how the outcome of the proceeding would have been different had she attended. *See In re K.R.*, 10th Dist. Franklin No. 22AP-51, 2023-Ohio-359, ¶ 18 (Denials of continuances have been repeatedly affirmed in permanent custody hearings where there is no showing that a grant of the continuance likely would have changed the outcome of the case).

10

{¶42} We are mindful that "great care must be taken to ensure that due process is used in parental termination proceedings." *In re Q.G.* at ¶ 12. However, based on the unique facts and circumstances presented here, we cannot say Ms. Wade's rights to due process were violated. Since the inception of this matter, Ms. Wade has been uncooperative with PCJFS and the court. She failed to attend most of the court hearings and never attempted to comply with her case plan objectives. Most fundamentally, "[a] parent facing termination of parental rights must exhibit cooperation and must communicate with counsel and with the court in order to have standing to argue that due process was not followed in a termination proceeding." *Id. See also In re B.D.*, 8th Dist. Cuyahoga No. 111767, 2023-Ohio-224, ¶ 36-40 (Trial court did not abuse its discretion by denying father's requests for continuances where the record demonstrated the court continually gave him continuances to attempt to bond with the child, he opted to wait over two years to get involved in the case, and he failed to appear without an explanation for his absence).

{¶43} Accordingly, Ms. Wade's assignment of error is without merit.

{¶44} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is affirmed.

JOHN J. EKLUND, P.J.,

MATT LYNCH, J.,

concur.

Case Nos. 2023-P-0046, 2023-P-0047